1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   MOHAMMED MUSA ATIFFI,              No.  CIV. S-12-3001 LKK/DAD

12             Plaintiff,

13        v.                           **ORDER**

14   JOHN F. KERRY[1], et al.,

15             Defendants.

16

17        **I.   BACKGROUND**

18        Plaintiff Mohammed Musa Atiffi is a U.S. citizen.  Complaint

19   (ECF No. 2) ¶ 1.  On May 28, 2010, plaintiff married Massoudah

20   Atiffi, a native and citizen of Afghanistan.  Id.  The Attifis

21   then commenced a two-pronged effort to obtain a U.S. immigrant

22   visa for Ms. Atiffi.

23        On August 5, 2010, plaintiff filed a Form I-130 ("Petition

24   for Alien Relative"), with the United States Citizenship and

25   Immigration Services ("USCIS"), of the Department of Homeland

26   _____

27   [1] John F. Kerry, was confirmed as U.S. Secretary of State on
     January 29, 2013.  113th Congress, Cong. Rec., Daily Digest p.
     8368 (January 29, 2013).  He is therefore substituted for his

28   predecessor, pursuant to Fed. R. Civ. P. 25(d).

                                    1

1   Security, on behalf of his wife.  Complaint ¶ 1.[2]  This form

2   requested that Ms. Atiffi be classified as an "immediate

3   relative."  Id.  This classification is important because aliens

4   so classified are not subject to the world-wide numerical

5   limitations on immigration.[3]

6       USCIS determined that Ms. Atiffi was, in fact, an "immediate

7   relative" and therefore approved plaintiff's I-130 petition.

8   Complaint ¶ 18; Declaration of Lynn Nguyen Ho ("Ho Decl.") (ECF

9   No. 11-2) ¶ 6.  USCIS then forwarded the approved I-130 petition

10  to the U.S. Department of State for visa processing at the

11  consular office in Kabul, Afghanistan.  Complaint ¶ 18; Ho Decl.

12  ¶ 6.[4]

13  ───────────────

14  [2] Congress has granted to the U.S. Citizenship and Immigration
    Services ("USCIS"), the authority to adjudicate immigrant visa
15  petitions, including the I-130 petition.  6 U.S.C. § 271(b)(1); 8
    U.S.C. § 1154(a)(1)(A)(i) ("[A]ny citizen of the United States
16  claiming that an alien is entitled … to an immediate relative
    status under section 1151(b)(2)(A)(i) of this title may file a
17  petition with the Attorney General for such classification"); 8
    C.F.R. 204.1 (a)(1) (requiring form I-130 to request "immediate
18  relative" status).

19
    Although Section 1154 identifies the Attorney General as the
20  recipient of the petition, "with the 2003 creation of the
    Department of Homeland Security ('DHS'), this responsibility now
21  belongs to the Secretary of DHS." Ching v. Mayorkas, 725 F.3d
    1149, 1155 & n.1 (9th Cir. 2013).  USCIS is a Bureau within DHS.
22  6 U.S.C. § 274.

23
    [3] See 8 U.S.C. § 1151(b)(2)(A)(i) ("immediate relatives" are "the
24  children, spouses, and parents" of a U.S. citizen; they are "not
    subject to direct numerical limitations").
25
    [4] See 8 U.S.C. § 1154(b) (if the alien on whose behalf the Form
26  I-130 is filed is determined to be an "immediate relative," USCIS
    "shall … approve the petition and forward one copy thereof to the
27  Department of State").

28

                                    2

To commence the second prong of this visa process, Ms. Atiffi applied to the consular office for a visa, and was interviewed by a consular officer. Complaint ¶ 19; Ho Decl. ¶ 6.[5] Based upon the approved Form I-130 filed by Mr. Atiffi on behalf of Ms. Atiffi, and the visa application filed by Ms. Atiffi herself, the consular official involved was then authorized to decide (1) whether to grant Ms. Atiffi the "immediate relative" status previously approved by USCIS, see 22 C.F.R. § 41.41,[6] and (2) whether to issue her the requested visa, see 8 U.S.C. § 1201(a)(1).

The consular officer was required to grant "immediate

---

[5] Congress has granted to consular officers the authority to issue, or to refuse to issue, immigrant visas, pursuant to its "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." Din v. Kerry, 718 F.3d 856, 860 (9th Cir. 2013) (citing Kleindienst v. Mandel, 408 U.S. 753, 766 (1972)); 8 U.S.C. § 1201(a)(1) (granting consular officers the authority to issue a visa to an immigrant "who has made proper application therefor"), 1201(g) (specifying when the consular officer may not issue a visa); Singh v. Clinton, 618 F.3d 1085, 1090 (9th Cir. 2010) ("[a]ny alien who is eligible for an immigrant visa must file a Form DS-230 to start the application process") (citing 22 C.F.R. § 42.63(a)).

In general, however, the Secretary of State has the authority to administer and enforce the immigration laws. 8 U.S.C. § 1104(a). Moreover, the Secretary of State retains the authority to direct the consular office to refuse a visa. 6 U.S.C. § 236(c)(1).

[6] "Consular officers are authorized to grant to an alien the immediate relative … status accorded in a petition approved in the alien's behalf upon receipt of the approved petition or official notification of its approval." 22 C.F.R. § 42.41.

However, "[t]he approval of a petition [by USCIS] does not relieve the alien of the burden of establishing to the satisfaction of the consular officer that the alien is eligible in all respects to receive a visa." Id.

3

1  relative" status to Ms. Atiffi if he was "satisfied" that she had

2  "the relationship claimed in the petition."   22 C.F.R. § 42.21.

3  The parties' papers do not disclose whether or not the consular

4  officer ever granted "immediate relative status" to Ms. Atiffi.[7]

5  However, on November 8, 2012, the consular office sent a letter

6  to Ms. Atiffi stating that it was "unable to issue a visa" to

7  her, having made the determination that she was "found ineligible

8  to receive a visa."   Complaint ¶ 19 & Exh. A (ECF No. 2-1).

9      The USCIS letter gave Ms. Atiffi no information about why

10  her visa application was refused.   Even though the USCIS letter

11  states that the statutory grounds for the denial of Ms. Atiffi's

12  application are "marked with 'X,'" in fact, no statutory grounds

13  were so marked.[8]   Rather, the letter advised Ms. Atiffi only

14  [7] Plaintiff does not allege that the consular officer granted
    this status, presumably because he was never informed one way or

15  the other.  Despite filing two declarations in support of its

16  motion to dismiss, the government also does not advise the court
    whether this status was granted or not.  However, having received

17  or been officially notified of the approved petition, if the
    consular officer was "satisfied that the alien has the

18  relationship claimed in the petition," then the officer was
    required to classify the alien as an "immediate relative."

19

20          An alien who is a spouse … of a United States
            citizen … shall be classified as an immediate

21          relative under INA 201(b) if the consular
            officer has received from DHS an approved

22          Petition … filed on the alien's behalf by the
            U.S. citizen and approved in accordance with

23          INA 204, and the officer is satisfied that
            the alien has the relationship claimed in the

24          petition.

25  22 C.F.R. § 42.21.

26  [8] Four separate possible grounds are listed in the letter, none
    of which are marked or highlighted in any way: INA Sections

27  221(g) (application "does not comply" with the INA), 212(a)(1)
    (health-related grounds), 212(a)(4) (if the alien is likely to

28  become a "public charge") and 212(a)([blank]) (the court does not

4

that:

> Your petition has been returned to US
> Citizenship and Immigration Services (USCIS)
> through the National Visa Center (NVC) for
> reconsideration and disposition. Further
> inquiries should be directed to the USCIS
> office that processed your petition.

Complaint Exh. A.

In short, the USCIS letter did not offer any explanation for the denial. Nor did it advise Ms. Atiffi whether she could overcome the consular determination "by the presentation of additional evidence." See 22 C.F.R. § 42.81(b). Ms. Atiffi was simply told that she was denied, with no statement of which statutory or regulatory authority was the basis for the denial, no statement of any factual basis for the denial, nor any instructions or information on how to proceed if she wished to pursue administrative remedies.[9]

Plaintiff filed this lawsuit on December 12, 2012, alleging that defendants' conduct violated the Administrative Procedure Act in that their actions were done arbitrarily, capriciously and contrary to law, in that defendants denied Ms. Atiffi's application for an immigration visa "without even a facially legitimate reason." Complaint ¶ 23. Plaintiff asserts that he

know what this section refers to, as it appears to be an incomplete citation to the law). The form instructs Ms. Atiffi: "Please disregard the unmarked paragraphs." An asterisked text explains what Ms. Atiffi should do if the application had been denied pursuant to Section 221(g), but the paragraph containing the notations for Section 221(g) is not checked, and nothing in the form indicates that the refusal was based upon that section.

[9] The only information given was that Ms. Atiffi could call USCIS with questions.

5

1   was deprived of his liberty interest in the integrity of his

2   family by the constitutionally inadequate procedures employed by

3   defendants in handling his petition and in denying the requested

4   visa to Ms. Atiffi.  Complaint ¶ 3.  Defendants - invoking "the

5   doctrine of consular non-reviewability," mootness and failure to

6   exhaust administrative remedies - move to dismiss the lawsuit in

7   its entirety for lack of federal jurisdiction.  Failing that,

8   defendants move to dismiss for failure to state a claim.

9       **II.  DISMISSAL STANDARDS**

10      **Rule 12(b)(1): Lack of Federal Jurisdiction.**

11      The party seeking to invoke the jurisdiction of the federal

12  court has the burden of establishing that jurisdiction exists.

13  KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936); Assoc.

14  of Medical Colleges v. United States, 217 F.3d 770, 778-779 (9th

15  Cir. 2000).  On a motion to dismiss pursuant to Fed. R. Civ.

16  P. 12(b)(1), the standards that must be applied vary according to

17  the nature of the jurisdictional challenge.

18      When a party brings a facial attack to subject matter

19  jurisdiction, that party contends that the allegations of

20  jurisdiction contained in the complaint are insufficient on their

21  face to demonstrate the existence of jurisdiction.  Safe Air for

22  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), cert.

23  denied, 544 U.S. 1018 (2005).  In a Rule 12(b)(1) motion of this

24  type, the plaintiff is entitled to safeguards similar to those

25  applicable when a Rule 12(b)(6) motion is made.  See Sea Vessel

26  Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994), Osborn v.

27  United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  The

28  factual allegations of the complaint are presumed to be true, and

the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.  Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004); Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir.), cert. denied, 534 U.S. 1018 (2001).  Nonetheless, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack.  Safe Air, 373 F.3d at 1039.

Alternatively, when a party brings a factual attack, it "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Id.  Specifically, a party converts a motion to dismiss into a factual motion where it "present[s] affidavits or other evidence properly brought before the court" in support of its motion to dismiss.  Id.  Unlike in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court need not assume the facts alleged in a complaint are true when resolving a factual attack.  Id. (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  While the motion is not converted into a motion for summary judgment, "the party opposing the motion must [nonetheless] furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Id.  When deciding a factual challenge to subject matter jurisdiction, district courts may only rely on facts that are not intertwined with the merits of the action.  Id.

### B.   Rule 12(b)(6): Failure To State a Claim.

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements.

1  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short
2  and plain statement of the claim showing that the pleader is
3  entitled to relief."   The complaint must give the defendant
4  "'fair notice of what the ... claim is and the grounds upon which
5  it rests.'"   Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)
6  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

7        To meet this requirement, the complaint must be supported by
8  factual allegations.   Ashcroft v. Iqbal, 556 U.S. 662, 678
9  (2009).   Moreover, this court "must accept as true all of the
10 factual allegations contained in the complaint."   Erickson v.
11 Pardus, 551 U.S. 89, 94 (2007).[10]

12       "While legal conclusions can provide the framework of a
13 complaint," neither legal conclusions nor conclusory statements
14 are themselves sufficient, and such statements are not entitled
15 to a presumption of truth.   Iqbal, 556 U.S. at 679.   Iqbal and
16 Twombly therefore prescribe a two-step process for evaluation of
17 motions to dismiss.   The court first identifies the non-
18 conclusory factual allegations, and then determines whether these
19 allegations, taken as true and construed in the light most
20 favorable to the plaintiff, "plausibly give rise to an
21 entitlement to relief."   Iqbal, 556 U.S. at 679.

22       "Plausibility," as it is used in Twombly and Iqbal, does not
23 refer to the likelihood that a pleader will succeed in proving

24  _____

25 [10] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance
26 are dismissals based on a judge's disbelief of a complaint's
   factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
27 (1974) ("[I]t may appear on the face of the pleadings that a
   recovery is very remote and unlikely but that is not the test"
28 under Rule 12(b)(6)).

the allegations.    Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."    Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[11]   A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.    Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**III. ANALYSIS – SUBJECT MATTER JURISDICTION**

**A. Mootness**

The government argues that plaintiff's claim is moot. Because an assertion of mootness is an attack on this court's "power to hear a case," this argument will be considered to be

---

[11] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of facts" language from Conley).   The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases.   See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), cert. denied, 132 S. Ct. 2101 (2012).   See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

1    part of defendant's motion to dismiss for lack of jurisdiction

2    pursuant to Rule 12(b)(1).   See Morrison v. Nat'l Australia Bank

3    Ltd., 561 U.S. ___, 130 S. Ct. 2869, 2877 (2010) (Rule 12(b)(1)

4    applies when the question is subject-matter jurisdiction, which

5    "refers to a tribunal's power to hear a case") (internal

6    quotation marks omitted); White v. Lee, 227 at 1242 ("mootness"

7    pertains "to a federal court's subject-matter jurisdiction under

8    Article III," and therefore is "properly raised in a motion to

9    dismiss under Federal Rule of Civil Procedure 12(b)(1), not

10   Rule 12(b)(6)).

11       The government asserts that the case is moot because the

12   consular office returned plaintiff's I-130 petition to USCIS.

13   Dismissal Motion at 11. Having returned plaintiff's I-130

14   petition to USCIS, there is no longer an I-130 form "on file" at

15   the consulate, and for lack of that form, the government argues,

16   the consular office was rendered "powerless" to act on

17   Ms. Atiffi's visa application, citing 22 C.F.R. §§ 42.21(a) &

18   42.42.  Id. at 11-12.  Because of the consular office's lack of

19   authority to act, the government asserts, the matter is moot,

20   because this court can no longer grant any relief to

21   plaintiffs.[12]

22       The court rejects the government's position.  First, the

23   cited regulations do not render the consular officer "powerless"

24   _____

25   [12] In other words, in the government's view, the consular office
     has the authority to render any challenge to its visa denials
26   moot – when the visa request is predicated upon the I-130
     petition – even if it denies the visa on plainly illegal or
27   unconstitutional grounds, simply by returning the I-130 petition
     to the USCIS.

28

10

1  to issue a visa simply because the I-130 petition is no longer

2  "on file" or physically present in the consular office.   Second,

3  even if the consular office were rendered powerless, there is

4  still meaningful relief this court can order.

5           **1.   No Form I-130 "on file."**

6       The government cites two regulations in support of its

7  assertion that the consular office is "powerless" to act now

8  because the I-130 petition is no longer "on file" in the consular

9  office.[13]   The first cited regulation only recites conditions

10  under which "immediate relative" status must be granted, namely

11  "if the consular officer has received" the approved I-130

12  petition, and "is satisfied that the alien has the relationship

13  claimed in the petition."   22 C.F.R. § 42.21(a).   The regulation

14  makes no reference to issuance of the visa itself, and certainly

15  does not render the consular officer "powerless" to issue a visa.

16  In any event, it makes no reference to any supposed need for the

17  I-130 petition to be "on file," or physically present in the

18  consular office.   Rather, it refers only to the situation where

19  the consular officer "has received" the petition.

20       There is no dispute in this case that the consular officer

21  "has received" plaintiff's I-130 petition on behalf of

22  _____

23  [13] The government's assertion that the form has been returned to
    USCIS is supported by the Dybdahl and Ho Declarations.   The

24  declarations, to which plaintiffs offer no objection, are
    proffered to establish a fact asserted to be jurisdictional in

25  nature, and are therefore properly considered on this motion.
    See Safe Air, 373 F.3d at 1039 (district courts  "may review

26  evidence beyond the complaint without converting the motion to
    dismiss into a motion for summary judgment" when resolving a

27  facial attack).

28

1  Ms. Atiffi.   Moreover, a companion regulation, 22 C.F.R. § 42.41,

2  makes clear that the I-130 need not be "on file" or physically

3  present at the consular office in order for the consular officer

4  to grant immediate relative status.   To the contrary:

> 5  Consular officers are authorized to grant an
> alien immediate relative … status … upon
> 6  receipt of the approved petition <u>or official</u>
> <u>notification of its approval</u>.
> 7

8  22 C.F.R. § 42.41.   These regulations – which <u>authorize</u> the

9  consular officer to grant immediate relative status "upon

10  notification" of the I-130 form's approval – simply do not render

11  the consular officer "powerless" to issue a visa unless the I-130

12  form is "on file" or physically present in the consular office.

13  The second regulation the government cites, 22 C.F.R.

14  § 42.42, contradicts the supposed rule or principle for which the

15  government cites it.   This regulation (unlike Section 42.21(a)),

16  does address whether the visa may, or may not, be issued.

17  However, it specifically does <u>not</u> require that the I-130 petition

18  be physically present in the consular office, or "on file" there.

19  Rather, it states that the consular officer

> 20  may not issue a visa to an alien as an
> immediate relative entitled to status under
> 21  201(b) [8 U.S.C. § 1151(b)] … unless the
> officer has received a petition filed and
> 22  approved in accordance with INA 204 <u>or</u>
> <u>official notification of such filing and</u>
> 23  <u>approval</u>.

24  22 C.F.R. § 42.42.   Thus, "official notification" of the filing

25  and approval of the I-130 petition is sufficient for the consular

26  officer to issue the visa.   In this case, the government concedes

27  that the consular officer received the approved petition.

28  Indeed, according to the declarations submitted by the

government, the approved petition was apparently still on file and physically present in the consular office when plaintiff filed his lawsuit.  See Dybdahl Decl. ¶ 6 (the approved petition was not returned to USCIS until January 18, 2013, which is a month after this lawsuit was filed).

The government now asserts that the petition was returned to USCIS "for review and possible revocation," but it does not assert that the filing or approval has actually been revoked. See Ho Decl. ¶ 5.  Accordingly, even after the petition was returned, the consular office still had, and apparently still has, "official notification" of the petition's filing and approval.

Because the consular office is not "powerless" to issue the visa, at least not pursuant to the regulations the government cites, the case is not moot.

## 2.  Other meaningful relief.

Even if the consular office were powerless to issue the visa however, this court is not powerless to render other meaningful relief to plaintiff.  Specifically, as discussed more fully below, plaintiff alleges that the consular office failed to comply with its mandatory, non-discretionary obligation to (1) provide Ms. Atiffi with notice of why her visa was refused, and (2) provide Ms. Atiffi with a facially legitimate and bona fide reason for refusing her visa application.

As discussed more fully below, this court has the authority to order consular officials to take such action.  Accordingly, to the degree plaintiff asserts that, apart from the non-issuance of the visa itself, the consular office is in violation of its

1  mandatory duties, this case is not moot.

2  **B.   Consular non-reviewability.**

3      The government asserts that the "doctrine of consular non-
4  reviewability" divests this court of authority to consider this
5  lawsuit.  The court does not agree.

6      The genesis of the doctrine in this Circuit is most commonly
7  attributed to Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) and
8  Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th
9  Cir. 1986).  Indeed, for Ninth Circuit authority, the government
10  relies exclusively on Li Hing and Bustamante v. Mukasey, 531 F.3d
11  1059 (9th Cir. 2008), for its assertions regarding consular non-
12  reviewability.  While those cases, and others that have followed,
13  typically use rather broad language in describing the doctrine,
14  examination of the cases reveals that there are circumstances
15  under which the doctrine does not apply at all, and others that
16  warrant a "limited exception" to the doctrine.

17      In Kleindienst, the Supreme Court upheld the decision of the
18  Executive Branch to deny a visa to a scholar who sought admission
19  to accept invitations to speak at various American universities.
20  The scholar was statutorily ineligible to receive a visa because
21  he was a proponent of "world Communism."  The U.S. Attorney
22  General was authorized by statute to waive the ineligibility, but
23  he declined to do so, based upon the asserted ground of the
24  scholar's "flagrant abuse" of an earlier visa.  The Supreme Court
25  held that when the Executive Branch exercises its authority to
26  deny a visa "on the basis of a facially legitimate and bona fide
27  reason," the courts "will neither look behind the exercise of
28  that discretion, nor test it by balancing its justification"

against the asserted constitutional interests of those who would challenge the decision.  Kleindienst, 408 U.S. at 769.[14] Similarly, in Li Hing, the Ninth Circuit rejected a challenge to the decision of a consular officer to deny a visa.  The court stated that "it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review."  Li Hing, 800 F.2d at 970.

There are, however, at least two situations in which the federal courts may review consular actions, as discussed more fully below.  First, since the doctrine only applies to conduct committed to consular discretion, the doctrine simply does not apply when the challenged consular action involves a non-discretionary, ministerial act.  Second, there is a "limited exception" to the doctrine that applies when a U.S. citizen alleges that the visa refusal violates his own constitutional

---

[14] The authority of Congress to make laws for the admission or exclusion of aliens is not an issue here.  Rather, it is the authority of the Executive Branch to enforce those rules free from review by the courts is at issue here.  Kleindienst found the specific support for the non-reviewability of the Executive's decisions in Lem Moon Sing v. U.S., 158 U.S. 538 (1895), which enforced an act "to prohibit the coming of Chinese persons" into the United States:

> "The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications."

Kleindienst, 408 U.S. at 766 (emphasis added) (quoting Lem Moon Sing, 158 U.S. at 547).

1  rights.

2       **1.   Non-applicability of the doctrine when non-**
           **discretionary, ministerial acts are challenged.**
3

4       The Ninth Circuit has made it clear that the doctrine of

5  consular non-reviewability does not apply to consular actions

6  that are mandatory and non-discretionary.   Rivas v. Napolitano,

7  714 F.3d 1108, 1111 (9th Cir. 2013) (the doctrine of consular

8  nonreviewability does not apply, and federal jurisdiction exists

9  when the consular office allegedly fails to carry out "a

10  nondiscretionary, ministerial duty"); Patel v. Reno, 134 F.3d

11  929, 931-32 (9th Cir. 1998) ("when the suit challenges the

12  authority of the consul to take or fail to take an action as

13  opposed to a decision taken within the consul's discretion,

14  jurisdiction exists").

15       In Patel, the Ninth Circuit established that the district

16  court has the authority to order consular officials to take

17  action that is mandated by the applicable regulations.   In that

18  case, the consular office failed to take action on plaintiffs'

19  visa application for eight (8) years.   Patel, 134 F.3d at 929.

20  The court acknowledged that normally, "a consular official's

21  discretionary decision to grant or deny a visa petition is not

22  subject to judicial review."   Id., at 931.   However, when an

23  action seeking mandamus "challenges the authority of the consul

24  to take or fail to take an action as opposed to a decision taken

25  within the consul's discretion, jurisdiction exists."   Id., at

26  931-32.

27       The court then identified a regulation, 22 C.F.R. § 42.81,

28  under which "[a] consular office is required by law to act on

16

1  visa applications." Id., at 932.  The court found that pursuant

2  to that regulation, "the consulate had a duty to act and that to

3  date, eight years after application of the visas, the consulate

4  has failed to act in accordance with that duty." Id., at 933.

5  Accordingly, "the writ should issue." Id.  The court therefore

6  reversed the district court's denial of mandamus, and remanded

7  "for the district court to order the consulate to either grant or

8  deny the visa applications." Id.

9      More recently, in Rivas, the consular office failed to act

10  on plaintiff's request to the consular office that it reconsider

11  its denial of his visa application.  Rivas, 714 F.3d at 1110.

12  The Ninth Circuit once again acknowledged that "[f]ederal courts

13  are generally without power to review the actions of consular

14  officials." Id. (citing Li Hing, 800 F.2d at 971).  However,

15  because the applicable regulation, 22 C.F.R. § 42.81(e), by its

16  plain terms imposed "a nondiscretionary, ministerial duty," the

17  Ninth Circuit held that "the district court has subject matter

18  jurisdiction under the Mandamus Act where the government fails to

19  comply with the regulation." Id. at 1112 (citing 28 U.S.C.

20  § 1361 and Patel, 134 F.3d at 931).

21      Moreover, the court also found that "because the consulate's

22  attention to requests for reconsideration that fall within 22

23  C.F.R. § 42.81(e) is legally required, that action may be

24  compelled under the APA." Id. (citing Norton v. Southern Utah

25  Wilderness Alliance, 542 U.S. 55, 63 (2004)).  The court also

26  determined that "because resolution of claims for mandamus relief

27  would require implementation of federal regulations," which

28  raises a federal question, "violations of 22 C.F.R. § 42.81(e)

17

1   give rise to subject matter jurisdiction under the Declaratory

2   Judgment Act."   Id. (citing Nationwide Mut. Ins. Co. v.

3   Liberatore, 408 F.3d 1158, 1161-62 (9th Cir. 2005)).

4       In this case, plaintiff alleges that the consular office

5   failed to carry out its non-discretionary, ministerial duty of

6   providing Ms. Atiffi with a specific statutory basis for the visa

7   refusal, as expressly mandated by 22 C.F.R. § 42.81(b) and 8

8   U.S.C. § 1182(b)(1).   Accordingly, since plaintiff challenges

9   consular action that is not committed to its discretion, the

10  doctrine of consular non-reviewability does not apply to that

11  aspect of this lawsuit.

12          **2.   Exception where constitutional rights of U.S.
                   citizen are involved.**
13

14      Under a "limited exception" to the doctrine of consular non-

15  reviewability, "[w]hen the denial of a visa implicates the

16  constitutional rights of an American citizen," the federal courts

17  "exercise 'a highly constrained review solely to determine

18  whether the consular official acted on the basis of a facially

19  legitimate and bona fide reason.'"   Din v. Kerry, 718 F.3d 856,

20  860 (9th Cir. 2013) (quoting Bustamante v. Mukasey, 531 F.3d

21  1059, 1060 (9th Cir. 1986)).   That is because "a citizen has a

22  protected liberty interest in marriage that entitles the citizen

23  to review of the denial of a spouse's visa."   Id.[15]

24  _____

25  [15] See also, Ching, 725 F.3d at 1156 (the "grant of an I-130
    petition for immediate relative status is a nondiscretionary
26  decision.   Immediate relative status for an alien spouse is a
    right to which citizen applicants are entitled as long as the
27  petitioner and spouse beneficiary meet the statutory and
    regulatory requirements for eligibility.   This protected interest
28  is entitled to the protections of due process").

1    In this case, plaintiff asserts that the consular office's

2  refusal of a visa to his wife implicates his protected liberty

3  interest in marriage.  Accordingly, this court has jurisdiction

4  to determine whether the refusal was made "on the basis of a

5  facially legitimate and bona fide reason."

6          **C.    Failure to Exhaust Administrative Remedies.**

7    The government asserts plaintiff cannot challenge the

8  consular officer's refusal or the decision to return Form I-130

9  to USCIS because USCIS is currently re-reviewing the Form.  The

10  government says plaintiff must wait for this second review to be

11  completed before filing any challenge.[16]  The government argues

12  that if on this review, USCIS revokes its approval of the

13  petition, plaintiff will have administrative remedies at that

14  point.  Dismissal Motion at 12-13.

15    This argument fails because plaintiff seeks mandamus of

16  allegedly unlawful conduct already engaged in by the consular

17  office.[17]  The Complaint alleges that the consular office has

18  already "refused" the visa, and has done so in an illegal

19  manner.[18]  With regard to the consular office's action, the

20

21  [16] The court notes that plaintiff has already waited over two (2)
     years for the initial review of the I-130 petition to be reviewed
22  and approved by USCIS and then rejected by the consular office.
     Also, by returning the Form I-130 to USCIS, plaintiff's petition
23  was put at the end of the line of 4,419 other "consular returns,"
     and possibly, at the end of the line of 477,000 petitions
24  awaiting initial review by USCIS.  See Ho Decl. ¶¶ 8 & 9.

25  [17] Plaintiff names various officials of USCIS as defendants, but
     seeks no relief against them.
26

27  [18] Moreover, by illegally failing to inform Ms. Atiffi of the
     basis for the visa refusal, the government is preventing
28  plaintiff from participating meaningfully in USCIS's current

                                   19

1   government has identified no administrative process for plaintiff

2   to exhaust.   Accordingly, this lawsuit is not barred by failure

3   to exhaust administrative remedies.

4                    **IV.   ANALYSIS - THE MERITS**

5       The consular office twice "refused the immigrant visa

6   application" of Ms. Atiffi.  Dybdahl Decl. ¶¶ 4 & 5; <u>see also</u>,

7   Complaint, Exh. A. (the consular office "is unable to issue a

8   visa" to Ms. Atiffi because she was "found ineligible to receive

9   a visa").

10      Having "refused" Ms. Atiffi a visa, the consular office was

11  then required to follow certain procedures.  Most notably, the

12  consular officer <u>must</u> let the visa applicant know why her

13  application was refused:

14          When an immigrant visa is refused … [t]he
            consular officer shall inform the applicant
15          of the provision of law or implementing
            regulation on which the refusal is based and
16          of any statutory provision of law or
            implementing regulation under which
17          administrative relief is available.

18  22 C.F.R. § 42.81(b).  This regulation thus imposed on the

19  consular officer "a nondiscretionary, ministerial duty" to inform

20  Ms. Atiffi of the statutory and/or regulatory basis for the visa

21  _____

22  review – he has no way of knowing what it is that USCIS is
    reconsidering, why it is reconsidering it, or whether there are
23  additional documents he could submit or other information he
    could provide to influence the USCIS's reconsideration.
24

25  In essence, the government is arguing that the consular office
    and USCIS can pass the application back and forth between their
26  offices indefinitely, preventing plaintiff from ever challenging
    their actions.  <u>Patel</u> prevents this by permitting mandamus relief
27  when the consular officer fails to carry out a duty imposed on
    him by law.
28

1   refusal.[19]  This court is empowered to enforce this duty under the

2   Administrative Procedure Act.   See Rivas, 714 F.3d at 1111-12.[20]

3          1.   **The refusal letter does not give any reason for
               the visa refusal.**

4

5          The   government   asserts   that   "[b]ecause   Ms. Atiffi   was

6   provided with the legal basis for the refusal, i.e., the statute

7   under which the application was refused, the Bustamante standards

8   of 'facially legitimate and bona fide' is met."   ECF No. 11 at

9   p.15.  This assertion is simply and plainly false.  As discussed

10  above, the government did not provide Ms. Atiffi with any "legal

11  basis" for the refusal.  The refusal document is attached to the

12  Complaint as Exhibit A, and plainly shows no statutory basis for

13  the refusal.   The government does not assert that Exhibit A is

14  not what it purports to be, or that it was altered in any way.

15  The government simply does not meet its duty of candor to this

16  court by making this plainly false assertion.[21]

17         Plaintiff thus states a claim under the APA to compel the

18

19  [19] There may be exceptions to the notice requirements, but the
    government has not asserted that they apply here.

20

21  [20] "Mandamus is an extraordinary remedy and is available to compel
    a federal official to perform a duty only if: (1) the

22  individual's claim is clear and certain; (2) the official's duty
    is nondiscretionary, ministerial, and so plainly prescribed as to

23  be free from doubt, and (3) no other adequate remedy is
    available."  Patel, 134 F.3d at 931 (citing Azurin v. Von Raab,

24  803 F.2d 993, 995 (9th Cir. 1986), cert. denied, 483 U.S. 1021
    (1987)).

25

26  [21] The government, in a footnote buried at the end of its Reply
    brief, finally concedes that it did not provide the required

27  information to Ms. Atiffi in the refusal letter.  See ECF No. 25
    at p.7 n.1.

28

consular office to provide an explanation for the visa refusal.

        **2.**     **The defendants' declarations do not provide a "facially legitimate and bona fide" reason for the refusal.**

Without acknowledging its failure to comply with the regulations, the government now – in its dismissal brief and in declarations filed with the motion – has provided an ever-growing series of reasons why the visa was refused. In its opening and reply briefs and declarations, the government now states that "[t]he legal basis of the visa refusal in this case was INA § 221(g); 8 U.S.C. § 1201(g)." ECF No. 11 at p.15; ECF No. 25 at p.26 n.1 ("this is a refusal under 8 U.S.C. § 1201(g)"). In the Dybdahl Declaration, the government asserts that pursuant to INA § 221(g), "a consular officer refused the immigrant visa application … for presentation of additional documentation." Dybdahl Decl. ¶ 4.[22] Later in the Dybdahl Declaration, the government asserts that pursuant to INA § 221(g), the visa was refused and the I-130 petition was returned to USCIS "for review and possible revocation based on new information, not previously available to USCIS, that Massaudah Attifi [sic] might not be eligible for the visa classification sought." Dybdahl Decl. ¶ 5.[23]

All three reasons assert that the refusal was based upon INA § 221(g) [8 U.S.C. § 1201(g)]. Since the refusal was expressly

---

[22] The Declaration does not say <u>what</u> additional documentation the government is looking for.

[23] The Declaration does not say what "new information" was discovered, or how Ms. Atiffi might dispute or overcome that information.

based upon the consular officer's determination that Ms. Atiffi was "found <u>ineligible</u> to receive a visa," <u>see</u> Complaint, Exh. A (emphasis added) and Ho Decl. ¶ 5, the refusal must have been based upon 8 U.S.C. § 1201(g)(1) or (3), as those are the only two bases for a finding of "ineligibility" under 8 U.S.C. § 1201(g).[24]  Subsections 1201(g)(1) and (3) both require that the visa be refused if the alien applicant is ineligible under 8 U.S.C. § 1182, "or any other provision of law."  8 U.S.C. § 1201(g)(1) and (g)(3).  Accordingly, the court must conclude that the consular officer found Ms. Atiffi "ineligible" under 8 U.S.C. § 1182, or some other provision of law.[25]  Within the twenty-one (21) subsections of Section 1182, only subsection 1182(a) identifies "classes" of aliens who are "ineligible" for visas.

Accordingly, the most specific information Ms. Atiffi could possibly deduce from the clues the government has given her – sprinkled like bread crumbs throughout the refusal letter, the government's opening brief, a footnote in the government's reply brief and a close examination of the applicable statutes – is that her visa was refused based upon 8 U.S.C. § 1182(a).  This is

---

[24] The only other possible basis for refusing a visa under 8 U.S.C. § 1201(g) is that "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder."  8 U.S.C. § 1201(g)(2).  The government has never asserted that this could possibly be the reason for the refusal.

[25] For example, it appears that a person is "ineligible" for an immigrant visa if he or she was previously removed from the U.S. upon his or her request, after "falling into distress."  8 U.S.C. § 1260.  If the basis was "some other law," the consular office has not, even now, advised Ms. Atiffi what that law is.

1  plainly insufficient under the statute governing refusals made

2  pursuant to Section 1182(a), as well as the specific holding of

3  Din v. Kerry that the consular office provide a facially

4  legitimate and bona fide reason for the refusal.

5          **a.   The specificity requirement of 8 U.S.C.**
               **§ 1182(b).**

6

7      Any consular visa refusal based upon Section 1182(a), is

8  required by law to cite the specific provision of the law that

9  rendered the applicant ineligible:

10         [I]f an alien's application for a visa … is
           denied by a[] … consular officer because the
11         officer determines the alien to be
           inadmissible under subsection (a) of this
12         section [listing "[c]lasses of aliens
           ineligible for visas"], the officer shall
13         provide the alien with a timely written
           notice that— (A) states the determination,
14         and (B) lists the specific provision or
           provisions of law under which the alien is
15         inadmissible.

16  INA 212(b)(1), 8 U.S.C. § 1182(b)(1) (emphasis added); Din v.

17  Kerry, 718 F.3d at 864 ("Section 1182(b) requires that the

18  consular officer notify aliens if their visa is denied and

19  provide the 'specific provision or provisions of law under

20  which the alien is inadmissible'").   The consular office did not

21  cite the specific provision of Section 1182(a) upon which the

22  visa refusal was based.   Even now, after the government has

23  submitted two briefs and two declarations about the refusal, the

24  government has not given a specific reason for the refusal.

25  There are ten (10) separate grounds for a refusal under Section

26  1182(a), each with their own sub-grounds and exceptions, any of

27  which could be the reason for the refusal in this case, as far as

28  the record shows:

1    (1)  Health-related grounds, <u>see</u> 8 U.S.C. § 1182(a)(1);

2    (2)  Criminal and related grounds, <u>see</u> <u>id.</u>, § 1182(a)(2);

3    (3)  Security and related grounds, <u>see</u> <u>id.</u>, § 1182(a)(3);[26]

4    (4)  "Public charge" grounds, <u>see</u> <u>id.</u>, § 1182(a)(4);

5    (5)  Labor-related grounds, <u>see</u> <u>id.</u>, § 1182(a)(5);

6    (6)  Immigration violation grounds, <u>see</u> <u>id.</u>, § 1182(a)(6);

7    (7)  Inadequate documentation grounds, <u>see</u> <u>id.</u>,

8    § 1182(a)(7);

9    (8)  Ineligibility for citizenship, <u>see</u> <u>id.</u>, § 1182(a)(8);

10    (9)  Previous removal grounds, <u>see</u> <u>id.</u>, § 1182(a)(9); and

11    (10) Miscellaneous grounds, <u>see</u> <u>id.</u>, § 1182(a)(10).[27]

The consular office plainly failed to give Ms. Atiffi the notice they were required to give her under the regulations, and it still has not done so. For that reason, the court has jurisdiction to order the consular office to provide that

---

[26] Note that if 1182(a)(2) or (3) were the grounds for the visa refusal, the government may possibly be excused from so notify the visa applicant. The government has not asserted that these provisions apply here. Even if it had done so, the government could, "as it does in other contexts, disclose the reason" for the visa denial to the court "in camera." <u>Din v. Kerry</u>, 718 F.3d at 866.

[27] In addition, the regulations appear to contemplate that the refusal letter will advise the applicant of what additional information, if any, needs to be submitted in order to "overcome" the "ground of ineligibility"). <u>See</u> 22 C.F.R. § 42.81(b). "If the ground of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates an intention to submit such evidence, all documents may, with the consent of the alien, be retained in the consular files for a period not to exceed one year." 22 C.F.R. § 42.81(b). However, this part of the regulation is not phrased as a clear, nondiscretionary duty, so at this point, the court will not rely on it as a basis for review of consular action.

information. [28]

### b.   **Din v. Kerry**.

Since the visa refusal in this case is alleged to violate plaintiff's liberty interest in his marriage, the court must also review the refusal to determine whether or not it was refused for a "facially legitimate and bona fide" reason.  Din v. Kerry, 718 F.3d at 860.   However, as in Din v. Kerry, the government has instead cited only a broad statutory basis for the refusal, thus failing to meet its mandatory duty.

In Din v. Kerry, a U.S. citizen filed a visa petition on behalf of her spouse, a citizen of Afghanistan.  718 F.3d at 858. The visa was denied.  The consular office ultimately advised the couple that the visa had been denied under 8 U.S.C. § 1182(a)(3)(B), "a broad provision that excludes aliens on a variety of terrorism-related grounds."  Id.  The Ninth Circuit held that this general recitation of the statute was insufficient

---

[28] Accord, Schutz v. Secretary, Department of State:

> the consular office simply referred to a broad portion of the Immigration and Naturalization Act and stated that it will not be issuing a visa "at this time".  The cited portion of the INA – Section 221(g), which is codified at 8 U.S.C. § 1182 – includes dozens of categories of aliens ineligible for visas.  These range from individuals with communicable diseases or without proof of certain vaccinations to those who have engaged in human trafficking or who have been affiliated with the Communist Party or who seek entry so as to perform unskilled labor.  Simply citing to this section cannot be said to "inform the applicant of the provision of law ... on which the refusal is based."

2012 WL 275521 at *3 (M.D. Fla. 2012) (citations omitted).

1    to meet the consular office's obligation to provide a "facially

2    legitimate and bona fide" reason for the visa denial.

3        In this case, the proffered basis for refusal – 8 U.S.C.

4    § 1201(g), and giving the government the benefit of every doubt,

5    8 U.S.C. § 1182(a) – is even less specific than 8 U.S.C.

6    § 1182(a)(3)(B), the proffered basis that the Ninth Circuit found

7    to be not specific enough in Din v. Kerry.   The proffered

8    explanation for refusal here excludes aliens on a variety of

9    terrorism-related grounds as well as the additional grounds

10   described above.[29]

11       Plaintiff thus has stated a claim under the APA to compel

12   the consular office to provide a specific statutory citation, and

13   a "facially legitimate and bona fide" reason, for the visa

14   refusal.

15   **V.   ANALYSIS – PLAINTIFF'S CROSS-MOTION FOR SUMMARY**
     **JUDGMENT**
16

17       Plaintiff cross-moves for summary judgment.   The above

18   discussion relating to the government's motion to dismiss

19   certainly indicates that plaintiff is entitled to an order

20   compelling the consular office to provide the specific grounds

21   for the visa refusal so that the court can review the refusal

22   _____

23   [29] The court notes that every visa refusal "must be in conformance
     with the provisions of 22 CFR 40.6." 22 C.F.R. § 42.81(a).   The
24   referenced regulation states that "[a] visa can be refused only
     upon a ground specifically set out in the law or implementing
25   regulations."   By citing only the most general provision of law
     that applies to this refusal, the consular office has deprived
26   this court of the ability to know what the ground for refusal
     was, and therefore, the court cannot determine if that ground was
27   "facially legitimate and bona fide."

28
                                  27

1    properly.   However, plaintiff failed to comply with Fed. R. Civ.

2    P. 56, as well as this court's Local Rules governing summary

3    judgment motions.    Critically, there is no statement of

4    undisputed facts, and alternatively, no identification of the

5    administrative record.

6         This case involves arcane agency action not normally

7    presented for review in this court, and involves consular action

8    alleged to be committed to the discretion of the Executive

9    Branch.   The court is reluctant therefore to guess about what the

10   record is, or what facts are really material to a decision here.[30]

11        Also, the court notes that several possible bases for the

12   visa refusal might possibly not require notice to plaintiff or

13   Ms. Atiffi, but they have not been discussed at all in the

14   parties' papers.   For example, it appears that the Secretary of

15   State can waive notice,[31] and certain refusals may not require

16   notice to the visa applicant.[32]    Also, it appears that the

17   Secretary of State is authorized to direct the consular officer

18   to refuse a visa, and it is not clear if notice is required in

19

20   [30] For example, it appears that the entire process can be
     "suspended" under certain conditions: "The consular officer shall
21   suspend action in a petition case and return the petition, with a
     report of the facts, for reconsideration by DHS … if the officer
22   knows or has reason to believe that approval of the petition was
     obtained by fraud, misrepresentation, or other unlawful means, or
23   that the beneficiary is not entitled, for some other reason, to
     the status approved."  22 C.F.R. § 42.43(a).   The absence of an
24   explanation for the visa refusal leaves the court unable to
     determine if this provision is involved in this case.
25

26   [31] See 8 U.S.C. § 1182(b)(2).

27
     [32] See 8 U.S.C. § 1182(b)(3).
28

such a case.[33]

## VI.   CONCLUSION

1.   Defendant's motion to dismiss (ECF No. 11), is **DENIED**;

2.   Plaintiff's cross-motion for summary judgment (ECF No. 22), is **DENIED** without prejudice to its renewal in a format that complies with the applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Eastern District of California.

IT IS SO ORDERED.

DATED:  November 4, 2013.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[33] See 6 U.S.C. § 236(c)(1).

29